UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:17-CR-047-PPS-JEM |
| | ) | |
| YAHTZEE HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

From July 2015 to November 2016, Defendant Yahtzee Harris participated in a large-scale drug distribution ring in Gary, Indiana. For this, he was charged (along with 7 others) in a second superseding indictment with numerous crimes, including conspiring to possess with the intent to distribute 280 grams or more of cocaine, in violation of 21 U.S.C. § 846, and possessing a firearm during a drug conspiracy, in violation of 18 U.S.C. § 924(c). [DE 485.] Harris, represented by attorney John Maksimovich, ultimately entered a plea of guilty to these two charges pursuant to a written agreement with the government. [DE 565 at 4.]

After accepting Harris's guilty plea, on March 1, 2021, I sentenced Harris to 168 months on the drug conspiracy count and 60 months on the gun count, resulting in a total sentence of 228 months, to be served consecutively, followed by a term of five years' supervised release.[1] [DE 1107; *see* DE 579.] Harris appealed his sentence on a

---

[1] Since Harris filed his motion, pursuant to Part A to Amendment 821 to the U.S. Sentencing Guidelines, the sentence I originally imposed on the drug distribution count has been reduced from 168 months to 151 months. This results in a new total sentence of 211 months on the two charges. [DE 1317; *see* DE 1315.]

narrow ground, challenging only the term of supervision imposed. [DE 1113.] On October 14, 2022, the Seventh Circuit affirmed Harris's judgment and sentence, along with those of two co-defendants (Antonio Walton and Charles Gould). *United States v. Harris*, 51 F.4th 705, 722 (7th Cir. 2022).

Harris filed a timely *pro se* motion to vacate his sentence under 28 U.S.C. § 2255, which is ripe for my review. [DE 1275; *see* DE 1283; DE 1285; DE 1286.] Harris's motion raises several grounds for relief based on ineffective assistance of counsel. [DE 1275 at 9–40.] For the reasons explained below, these arguments lack merit and therefore the motion will be denied.

### Legal Standard

Section 2255(a) authorizes a federal court to grant relief where a federal prisoner's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law." The Seventh Circuit has observed that this is a high bar: "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a right to the effective assistance of counsel for his defense. *Burkhart v. United*

*States*, 27 F.4th 1289, 1295 (7th Cir. 2022). If a § 2255 motion claiming ineffective

assistance of counsel survives preliminary review and is considered on its merits, I must

evaluate the claim under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d

757, 761 (7th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

"The benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Under *Strickland*, the petitioner must prove (1) that her attorney's performance fell

below an objective standard of reasonableness, and (2) that the attorney's deficient

performance prejudiced the defendant such that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different." *McDowell*, 497 F.3d at 761. If either the performance or prejudice component

of a petitioner's ineffective assistance claim is deficient, there is no need for me to

evaluate the other part of the test. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th

Cir.1990). *See also Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir.1993) ("A defendant's

failure to satisfy either prong is fatal to [her] claim.").

My review of attorney performance is "'highly deferential,' with the underlying

assumption that 'counsel's conduct falls within the wide range of reasonable

professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002)

(quoting *Strickland*, 466 U.S. at 689). Counsel is "strongly presumed to have rendered

adequate assistance and to have made significant decisions in the exercise of his or her

reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004). To show otherwise is a steep climb for the defendant. *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006). In order to establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes*, 456 F.3d at 790.

As to the second element, a showing of prejudice as a result of counsel's ineffective assistance, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Pergler*, 233 F.3d 1005, 1011 (7th Cir. 2000) (quoting *Strickland*, 466 U.S. at 693-94). It is not enough that a defendant "show merely  that 'the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cooper*, 378 F.3d at 642 (citing *Strickland*, 466 U.S. at 686). Like the first prong, this test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

## Analysis

With this standard in mind, let's turn to the grounds for relief presented by Harris's motion. First, Harris asserts that his counsel failed to adequately advise him about the consequences of pleading guilty to the drug conspiracy charge. [DE 1275 at 9–14.] More specifically, he argues that he did not understand the difference between a

conspiracy and simple possession of drugs with the intent to distribute and disputes that he actually sold more than 280 grams of crack cocaine.

Recall that Harris entered into a written agreement to plead guilty to the aforementioned charges. [DE 565.] Harris agreed that he was "prepared to state to the Court the facts in this matter that cause [him] to believe that [he] is guilty of the offense to which [he had] agreed to plead guilty," namely, that from July of 2015 to at least November 2016, he "conspired with others to distribute and possess with the intent to distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine." *Id.* at 4, 7. He agreed that he understood "every accusation made against [him] in this case," and that his lawyer had "counseled and advised with [him] as to the nature and elements of every accusation against [him] and as to any possible defenses [he] might have." *Id.* at 1–2. Harris further waived his right to appeal his conviction and sentence on "any ground *other than a claim of ineffective assistance of counsel*," in any post-conviction proceeding. *Id.* at 6 (emphasis added).

At the change of plea hearing, I placed Harris under oath, and he swore that he was "[a] hundred percent" satisfied with the advice and counsel that he had received from his attorney. [DE 766 at 4.] Harris confirmed that he had reviewed the plea agreement and "talked" with his attorney about its provisions, and that his attorney was "able to answer all of [his] concerns and questions." *Id.* at 6. Harris had spoken with counsel about the guideline calculations applicable in his case, so that he had some

"estimates as to where [his] case might fall under those guidelines," but he confirmed that he understood that the guidelines were only advisory, not binding on my decisionmaking. *Id.* at 9, 16–17. Finally, Harris confirmed that his plea was not the product of any coercion, was entered of his "own free will because [he was], in fact, guilty," and that he understood the appellate waiver and that he gave up those important rights "knowingly and voluntarily." *Id.* at 11–12, 15–16.

Typically, a petitioner who has pled guilty, like Harris, can challenge his conviction only by showing that the plea was entered unknowingly or involuntarily. *United States v. Broce*, 488 U.S. 563, 574 (1989). *See also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (a guilty plea is constitutionally valid "if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences"). Importantly, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral view only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). *See also Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) (explaining that by "failing to take a direct appeal, [defendant] procedurally defaulted the argument that he appears to raise here—that he did not knowingly and voluntarily enter his plea of guilty," and such "procedurally defaulted" claims typically may not be raised in § 2255 proceeding). The Supreme Court has explained that this procedural hurdle serves an important purpose by encouraging defendants to bring their challenges promptly on direct appeal and giving finality to

6

proceedings. *Bousley*, 523 U.S. at 621 (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994);

*United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

The government asserts that Harris has procedurally defaulted on his challenge

to the plea agreement, as he did not raise this issue on direct appeal. [DE 1283 at 9.] But

that argument is misplaced. Harris's claim is that his *counsel was ineffective* in failing to

adequately inform him about the elements of the crime to which he pled guilty. He

asserts that he was confused about what 'conspiracy' entailed (*i.e.*, compared to simple

possession with intent to distribute drugs), and that he did not know he would be

pleading guilty to conspiracy to distribute 280 grams of crack cocaine, rather than some

smaller quantity he personally possessed. [DE 1285 at 12.] *See Massaro v. United States*,

538 U.S. 500, 504 (2003) (agreeing with majority of circuit courts that there is no

procedural default for failure to raise ineffective assistance claim on direct appeal). I

will therefore evaluate the merits of his ineffective assistance of counsel claim.

Harris asserts that he told his lawyer that he had never had such a large quantity

of drugs in his possession and disputed that the government could prove he was in a

conspiracy based on evidence that he repeatedly sold small quantities of drugs.

[DE 1275 at 9.] The problem for Harris is that what he is telling me now is contrary to

what he told me at the plea hearing. In this type of circumstance, I can "reject out of

hand, absent a compelling explanation, factual allegations that depend on the defendant

having committed perjury at a plea hearing." *United States v. Purnell*, 701 F.3d 1186,

1190-91 (7th Cir. 2012) (internal citations omitted). *See also United States v. Gonzalez*, 772

F. App'x 358, 359 (7th Cir. 2019) (same); *Flores v. United States*, 653 F. App'x 472, 475 (7th Cir. 2016) (same); *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("A defendant has no legal entitlement to benefit by contradicting himself under oath.").

Let's briefly return to the change of plea hearing. After the preliminary discussion outlined above, I proceeded to explain to Harris the nature of a conspiracy. I told him that it's "simply an agreement between two or more people to do something illegal," and in this case, "the agreement that's alleged is that [he] agreed with other people to distribute crack cocaine." [DE 766 at 19.] Harris, who was under oath, confirmed his understanding that, were the case to proceed to trial, the government would have to prove "essential elements of [the] crime" "in order for [him] to be found guilty." Those included: "[f]irst, the conspiracy existed; and second, that [he] knowingly and intentionally became a member of the conspiracy with the intention of trying to make it succeed." *Id.* at 19–20.

Harris told me he "fully unders[ood] these charges [he was] about to enter a plea of guilty to," and that he "conspired with several individuals to sell crack cocaine." *Id.* at 20. He further explained how for several months, he bought cocaine and "cook[ed] it to crack," and would "give some crack cocaine to other people" who would "distribute it to people who were users." Harris's network of sellers would "bring the money back" to him." *Id.* at 20–21. Harris "agree[d] fully" with the government's factual basis that he conspired to distribute 280 grams or more of crack cocaine and that he "bought the cocaine, worked with others to cook it and used other people to sell it for him." *Id.* at

22–23. According to the government, there was a bevy of evidence against Harris, including "undercover buys" and phone and video recordings, as well as a search warrant that uncovered indicia of drug dealing. *Id.*

Without belaboring the point, Harris plainly understood the nature of the drug conspiracy and drug quantity charged. He pled guilty in open court to the charge of conspiracy to possess with the intent to distribute more than 280 grams of crack, pursuant to the parties' written plea agreement and the factual basis the government presented. [*See* DE 766 at 6.] There is no credible basis to conclude that his plea was entered unknowingly or was the product of coercion or because of misguided advice from Mr. Maksimovich. To so conclude would require finding that Harris lied during the change of plea hearing, and that is fatal to his claim.

Moving on to his second collection of arguments, Harris asserts that his counsel was ineffective by failing to challenge the government's proof of a drug conspiracy. [DE 1275 at 15–28.] On one hand, it appears that Harris takes issue with counsel's failure to "challenge and object to the . . . Indictment," which he claims omitted "the essential elements of conspiracy to distribute." *Id.* at 15. But his guilty plea waived this argument, so that's a non-starter. *See United States v. Dowthard*, 948 F.3d 814, 817 (7th Cir. 2020) (citing *United States v. Wheeler*, 857 F.3d 742, 744 (7th Cir. 2017)) (defendant's "guilty plea waived his right to assert that the indictment failed to state an offense").

On the other hand, this bundle of arguments seems to challenge the government's evidence supporting the conspiracy charge – and, by extension, assert

that attorney Maksimovich was deficient by failing to raise an array of arguments contesting this evidence. But as addressed above, there is no doubt that Harris's guilty plea was entered voluntarily, knowingly, and supported by an adequate factual basis. In this context, the circuit has explained the "general rule" that a defendant "who pleads guilty waives his right to appeal any nonjurisdictional issues." That includes "right to contest the sufficiency of the evidence." *United States v. Langner*, 668 F. App'x 168, 169 (7th Cir. 2016) (citing *United States v. Adame–Hernandez*, 763 F.3d 818, 828 (7th Cir. 2014); *United States v. Phillips*, 645 F.3d 859, 862 (7th Cir. 2011); *Gomez v. Berge*, 434 F.3d 940, 942 (7th Cir. 2006)).

This claim also fails on the merits. At the change of plea hearing, I explained the elements of the conspiracy charge. In his own words, Harris summarized the facts that made him guilty of the charge: he "conspired with several individuals to sell crack cocaine," meaning he would cook it and distribute it to a network of sellers who would sell the drugs and then return the money to him or his girlfriend. After the government laid a factual basis for the charge, Harris confirmed that he "agree[d] fully" with the facts presented. [DE 766 at 20–25.] Thus, even accepting that Harris can raise this species of argument by styling it as a claim of ineffective assistance of counsel, it runs headlong into his sworn statements at his change of plea hearing. Courts look askance at "weak 'after-the-fact explanation[s]'" that cut against the "verity that presumptively attaches to a defendant's statements when entering a guilty plea." *See Flores*, 653 F. App'x at 476 (quoting *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010)). *See also Purnell*, 701

10

F.3d at 1190-91 (court "may reject out of hand, absent a compelling explanation, factual allegations that depend on the defendant having committed perjury at a plea hearing"). In sum, Harris's second bundle of arguments challenging the government's proof of a drug conspiracy do not warrant relief.

Harris's third ground for relief is that his counsel was ineffective by failing to investigate the government's evidence supporting a four-level organizer/leader sentencing enhancement under U.S.S.G. § 3B1.1. [DE 1275 at 29–35.] Specifically, Harris asserts that his attorney should have hired a private investigator to further check out the government's claims that he forced individuals to walk home in underwear and contest an apparent cell phone recording of an individual being made to strip naked – some of the evidence that indicated Harris was a leader in the drug operation. *Id.* at 34. He also suggests that his attorney did not explain the enhancement to him and he was confused about the impact it would have on the sentence I ultimately entered. *Id.* at 35.

The Constitution requires an attorney to make a "reasonable" investigation of the facts supporting a charge. *Strickland*, 466 U.S. at 691. Understanding that "an attorney need not investigate every possible factual scenario," *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017), purported deficiencies predicated on counsel's failure to investigate evidence require a petitioner to allege "what the investigation would have produced." *Id.* at 920 (*Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (per curiam)).

Harris's conclusory claims fall far short of demonstrating that his counsel's performance was constitutionally deficient. *See Long*, 847 F.3d at 922 (applying *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015)). At sentencing, the government presented evidence that Harris led a group of dealers, including John Tyson, Dujuana Dubose, Claude Tate, Kevin Hatter, Christopher Green, and Robert Blue. Harris received phone calls and directed buys to particular dealers, provided dealers with phones and drugs, and the dealers would give him money in return. Harris purchased cocaine from Antonio Walton, cooked it into crack cocaine, packaged it, and distributed it out of his home and a second house on Jackson Street in Gary. [DE 1118 at 5; *see* DE 1009 at 2–5.] Tremaine Ervin, the mother of five of Harris's children, explained at her change of plea hearing how she would provide a "package" to a dealer in exchange for money, so sometimes the process would not flow directly through Harris. [DE 1009 at 3–4.] In sum, there was substantial evidence that Harris was indeed an organizer/leader of the conspiracy – he ran two separate crack houses and had at least six dealers under his ambit as part of the conspiracy to which he pled guilty.

What's more, on this issue, there can be no claim that his counsel was ineffective because Mr. Maksimovich forcefully argued against application of the organizer/leader enhancement. [DE 1118 at 6–8; DE 996 at 1–4.] First, counsel attempted to distinguish Harris's role from that of another conspirator, Ben Hickman, who was subject to the enhancement, arguing that Hickman dealt in much greater volumes while Harris distributed drugs primarily in small quantities to the same folks who were dealing for

him. *Id.* at 6–7. He also noted that the main drug activity occurred elsewhere, not in the Jackson/Monroe Street area, and involved individuals who were buying and selling drugs "before Yahtzee ever got there." [DE 1118 at 8.] In sum, counsel argued, the evidence was too weak to support the four-level enhancement – "this was really a motley crew of individuals that were not very well organized." *Id.* On the record presented, counsel presented reasonable arguments that Harris was not an organizer or leader of criminal activity involving five or more participants. At the end of the day, I simply disagreed due to the weight of the evidence presented by the government. *See id.* at 9–11.

Harris's fourth and final ground for relief rehashes arguments about counsel's failure to contest the government's evidence of the drug quantity at issue. [DE 1275 at 36–40.] At bottom, Harris asserts that his attorney should have disputed that he was responsible for conspiring to possess with the intent to distribute at least 280 grams of crack cocaine. But that's exactly what he admitted under oath. [DE 766 at 6, 18–19, 22–25; *see* DE 565 at 4, 7.] Harris fails to demonstrate that his counsel's performance fell short of an objectively reasonable standard by failing to object to facts that he himself admitted the government could prove beyond a reasonable doubt if the case were to proceed to trial. *Accord Purnell*, 701 F.3d at 1190-91; *Flores*, 653 F. App'x at 476.

In sum, Yahtzee Harris has failed to demonstrate a right to relief under § 2255, so his motion to vacate will be denied. It is well established that a district court need not grant an evidentiary hearing in all section 2255 cases. A hearing is not required if "the

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016) ("Not every petitioner who seeks relief pursuant to § 2255 is entitled to an evidentiary hearing."). For the reasons outlined above, a hearing is not warranted in this case.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." For the reasons set forth above, I find no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2); *Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016). If Harris wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure Rule 22.

**Conclusion**

Defendant Yahtzee Harris's Motion to Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255 [DE 1275] is **DENIED**, and a certificate of appealability is also **DENIED**. The Clerk is **DIRECTED** to enter judgment against Harris and in favor of the United States in the civil case opened at Cause No. 2:23-CV-097-PPS, and mail a copy of this opinion to Harris.

**SO ORDERED**.

ENTERED: June 18, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

15